UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-5273(DSD/JSM)

Summit Recovery, LLC,

       Plaintiff,

v.                         **ORDER**

Credit Card Reseller, LLC and
Bobbie-Jo Diebold,

       Defendant and Third
       Party Plaintiffs,

v.

Security Credit Services, LLC,

       Defendant and Third
       Party Plaintiff,

v.

Restaurant eFund, LLC,

       Third Party Defendant.


    Paul A. Sortland, Esq. and Sortland Law Office, 431 South
    Seventh Street, Suite 2440, Minneapolis, MN 55415,
    counsel for plaintiff.

    David K. Nightingale, Esq., George E. Warner, Jr., Esq.
    and Bernick, Lifson, Greenstein, Greene & Liszt, P.A.,
    5500 Wayzata Boulevard, Suite 1200, Minneapolis, MN
    55416, counsel for defendant and third-party plaintiffs
    Credit Card Reseller and Bobbie-Jo Diebold.

    Brian M. Sund, Esq., Kerry A. Trapp, Esq. and Morrison,
    Fenske & Sund, P.A., 5125 County Road 101, Suite 102,
    Minnetonka, MN 55345, counsel for defendant and third
    party plaintiff Security Credit Services.


    This matter is before the court on defendants and third-party

plaintiffs' motions for summary judgment.  After a review of the

file, record and proceedings herein, and for the following reasons, the court grants the motions.

## BACKGROUND

This diversity action arises out of plaintiff Summit Recovery, LLC's ("Summit")[1] purchase of a consumer-debt portfolio of 40,828 debt accounts (the "Portfolio") from defendant Credit Card Reseller, LLC ("CCR")[2] on October 24, 2006. (Diebold Dep. 13–16.) The Portfolio was originally owned by Restaurant eFund, LLC ("eFund"), a check guarantor. (See id. 15–16.) eFund sold the Portfolio to Security Credit Services, LLC ("SCS")[3] on September 15, 2006. (Def.'s Mem. Supp. [Doc. No. 38] 3.) Prior to the sale, eFund represented to SCS that the Portfolio had never been outsourced to a collection agency, and that its collection efforts were limited to electronic re-presentation to banks and a collection letter. (Berger Decl. Ex. F.)

---

[1] Summit is a Delaware limited-liability company that purchases subperforming debt for collection. Summit is owned by Mitchell Domershick, a citizen of New York.

[2] CCR is a Minnesota limited-liability company with a sole member, defendant Bobbie Jo Diebold, who is a citizen of Minnesota.

[3] SCS asserts that it is a Mississippi corporation with its principal place of business in Oxford, Mississippi. Its name and the Mississippi Secretary of State's website, however, indicate that SCS is a Mississippi limited-liability company with at least one member, William Alias, Jr., whose address is listed as Oxford, Mississippi.

Thereafter, SCS told defendant and CCR owner Bobbie Jo Diebold ("Diebold") about the Portfolio, and provided her its seller survey.[4] (Id. Ex. G.) The survey indicated that the accounts had not been outsourced for collection. (Id.) On October 3, 2006, Diebold sent an email to 2,000 potential buyers of consumer debt, advertising the Portfolio:

Interested in Bad Checks?

-- National file

-- Accounts have NEVER been outsourced to a collection agency.

-- Looking for 1 buyer to purchase all

-- 40,828 Accts

-- $2.4 MM Face

-- Avg. Bal. -$60.75

-- Avg. Write-Off Date: 3/26/05

-- 95% of checks come imaged on CD

-- Direct pass through from the buyer who purchased direct from checking company

-- Possible FORWARD FLOW

...

If you have an interest please contact me by phone or email.

Seller survey available.

---

[4] A seller survey provides information about the debt portfolio, including the nature of the debts, face value and previous collection activity. (See, e.g., Berger Decl. Exs. F-G.)

(Diebold Dep. 21-22, Ex. 2.) Summit owner Mitchell Domershick ("Domershick") replied to the email on October 11, 2006, asking, "Are the accounts reported to check systems or credit bureaus?" (Id. Ex. 11.) Diebold responded, "No on both fronts - we have not reported any checks nor has e-funds [sic] - which is another reason why this check deal is sooooo [sic] good!" (Id.) CCR then provided Summit a redacted version of the Portfolio. (See Domershick Dep. 22-28.) After performing due diligence based on the redacted Portfolio, Summit agreed to an $86,810.79 purchase price. (Id.; Diebold Dep. Ex. 5.) CCR purchased the Portfolio from SCS on October 23, 2006, and sold it to Summit the next day.

The contract executed by Summit and CCR for the sale of the Portfolio states:

> The Buyer acknowledges that the Seller does not represent, warrant or insure the accuracy or completeness of any information or its sources of information contained in the information provided or in any of the Account Files. The Buyer agrees and represents that the Accounts, and Account Information made available to it were an adequate and sufficient basis on which to determine whether and at what price to purchase the Accounts. The Buyer has made such independent investigations as it deems to be warranted into the nature, validity, enforceability, collectability, and value of the Accounts, and all other facts it deems material to its purchase and is entering into this transaction solely on the basis of that investigation and the Buyer's own judgment, and is not acting in reliance on any representation made or information furnished by the Seller.

(Diebold Dep. Ex. 5 § 7.1.)  The contract also states: "BUYER ACKNOWLEDGES AND AGREES THAT SELLER AND BROKER HAVE NOT AND DO NOT REPRESENT, WARRANT OR COVENANT THE NATURE, ACCURACY, COMPLETENESS, ENFORCEABILITY OR VALIDITY OF ANY OF THE ACCOUNTS." (Id. § 7.8 (emphasis in original).)  The contract further provides that it "supercedes any and all prior discussions and agreements between Seller and Buyer" and "constitute[s] the final complete expression of the intent and understanding of the Buyer and the Seller." (Id. §§ 17.5–17.6.)

Shortly after Summit began collection of the Portfolio, it discovered that the accounts had previously been outsourced. (See Berger Decl. Ex. K.)  Summit notified CCR about the status of the debts in November 2006. (See Diebold Dep. Ex. 11.)  CCR accepted return of debts involving bankrupt and deceased debtors, but not the entire Portfolio. (Domershick Aff. ¶ 6.)  As of November 2009, Summit has recovered $40,100 from debtors in the Portfolio. (Berger Decl. Ex. D at 11.)

On October 24, 2007, Summit filed the instant action against CCR and Diebold in Minnesota state court, claiming fraudulent and negligent misrepresentation, breach of contract and violations of the Minnesota Deceptive Trade Practices Act ("MDTPA") and the Minnesota Unlawful Trade Practices Act ("MUTPA").  On September 25, 2008, CCR and Diebold filed a third-party complaint against SCS seeking indemnification for Summit's claims.  SCS timely removed

5

and filed a third-party complaint against eFund seeking indemnification for CCR and Diebold's claims. The court granted SCS' motion for entry of default judgment against eFund on October 30, 2009. (Doc. No. 54.) The court now considers CCR, Diebold and SCS' motions for summary judgment.

## I. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary

6

judgment, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

## II. Fraudulent Misrepresentation

To succeed on its fraudulent misrepresentation claim, Summit must prove (1) a false representation of a past or existing material fact susceptible of knowledge, (2) made with knowledge of the falsity of the representation or made without knowing whether it was true or false, (3) with the intention to induce Summit to act in reliance thereon, (4) that the representation caused Summit to act in reliance thereon, and (5) that Summit suffered pecuniary damages as a result of its reliance. Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 368 (Minn. 2009).

Viewing the evidence in the light most favorable to Summit, genuine issues of material fact remain under elements one and three through five. Summit's claim fails, however, on element two. To prove CCR's knowledge, Summit must show that CCR knew or believed that the Portfolio had been outsourced, was conscious of its ignorance of the true nature of the Portfolio or realized that the information on which it relied was inadequate or undependable. See Florenzano v. Olson, 387 N.W.2d 168, 173 (Minn. 1986). Summit does not assert that CCR knew that the Portfolio had been outsourced, but argues that CCR is liable because it did not investigate whether the accounts had been previously outsourced.

7

CCR made its statements based on the seller survey of SCS, which indicated that the accounts had not been outsourced.[5]  Summit offers no evidence to support an inference that CCR was consciously ignorant of the real nature of the debts or realized that the seller surveys were inadequate or undependable.  Summit's assertion that the Portfolio turned out to be different than CCR represented addresses the falsity of the representations, not CCR's knowledge.  Furthermore, Summit offers no legal basis for requiring CCR to investigate the accuracy of the information in the seller surveys.  Simply, Summit offers no evidence from which a reasonable jury could find that CCR acted with the required knowledge.  Therefore, the court grants summary judgment on this claim.

## III.  Negligent Misrepresentation

Summit next argues that CCR negligently misrepresented the Portfolio.  To succeed on this claim, Summit must prove that (1) in the course of CCR's business, profession, or employment, or in a transaction in which it has a pecuniary interest; (2) CCR supplied false information for the guidance of Summit in its business transactions; (3) Summit justifiably relied on the information; and (4) CCR failed to exercise reasonable care in obtaining or communicating the information.  See Valspar, 764 N.W.2d at 369 (citing Restatement (Second) of Torts § 552 (1977)).  A defendant

---

[5] SCS' survey relied on and adopted the seller survey of eFund.

is liable for negligent misrepresentation only if it owes a duty of care to the plaintiff. <u>M.H. v. Caritas Family Servs.</u>, 488 N.W.2d 282, 287 (Minn. 1992). Whether a duty of care exists is a question of law. <u>Safeco Ins. Co. of Am. v. Dain Bosworth, Inc.</u>, 531 N.W.2d 867, 873 (Minn. Ct. App. 1995).

Even if Summit establishes the other elements, its claim fails because it cannot establish that CCR owed it a duty of care. No duty of care exists when, as here, sophisticated parties negotiate at arm's length unless the parties have a special relationship. <u>See</u> <u>Smith v. Woodwind Homes, Inc.</u>, 605 N.W.2d 418, 424–25 (Minn. Ct. App. 2000); <u>Safeco</u>, 531 N.W.2d at 871–72 (listing cases); <u>see also</u> <u>La Parilla, Inc. v. Jones Lang LaSalle Ams., Inc.</u>, No. 04-4080, 2006 WL 2069207, at *10 (D. Minn. July 26, 2006) ("Without evidence of a special relationship, no duty of care exists.").

Summit argues that it had a special relationship with CCR because CCR controlled the information about the Portfolio. Minnesota courts have found a special relationship when one party acts in the interest of another or provides guidance to another. <u>See, e.g.</u>, <u>Florenzano</u>, 387 N.W.2d at 174–75 (finding duty by insurance agent to client); <u>Bonhiver v. Graff</u>, 248 N.W.2d 291, 299 (Minn. 1976) (finding duty by accountant to client); <u>Baker v. Sunbelt Bus. Brokers</u>, No. A07-0514, 2008 WL 668608, at *1, *10 (Minn. Ct. App. Mar. 11, 2008) (finding duty by broker representing interests of client).

In this case, CCR merely provided information to Summit. See Safeco, 531 N.W.2d at 873 ("It would be unreasonable to impose a duty whenever a party gives any information to another party."). Summit used the information in its independent consideration of the purchase. CCR neither provided guidance to Summit about whether to purchase or at what price, nor acted in Summit's interest. Therefore, the court determines that no special relationship existed between CCR and Summit, and summary judgment is warranted on this claim.

## IV. Breach of Contract

Under Minnesota law, a claim of breach of contract requires proof of the formation of a contract, the performance of conditions precedent by the plaintiff and the breach of the contract by the defendant. See Briggs Transp. Co. v. Ranzenberger, 217 N.W.2d 198, 200 (Minn. 1974). Generally, the parol evidence rule bars admission of extrinsic evidence when the parties have reduced their agreement to an unambiguous, integrated writing. Johnson Bldg. Co. v. River Bluff Dev. Co., 374 N.W.2d 187, 193 (Minn. Ct. App. 1985). When a party alleges fraud in the inducement to contract, however, the court considers parol evidence to determine whether an enforceable contract was formed. Id. Summit argues that the contract was fraudulently induced by the email communications between CCR and Summit. The court, however, has already determined that summary judgment is warranted on Summit's misrepresentation

10

claims.  See Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736

N.W.2d 313, 316-17 (Minn. 2007) (applying elements of fraudulent

misrepresentation to claim of fraudulent inducement).  Therefore,

Summit's fraud in the inducement argument fails, and the court will

not consider parol evidence to vary the terms of the contract.  See

Johnson Bldg., 374 N.W.2d at 193.

Summit also claims that CCR breached the contract by providing

previously outsourced debt.  The contract, however, expressly

stated that the sale of the Portfolio was not contingent on CCR's

representations.  For example, the contract states that, "[s]eller

does not represent, warrant, or insure the accuracy or completeness

of any information or its sources of information contained in the

information provided or in any of the Account files," and "[b]uyer

... is not acting in reliance on any representation made or

information furnished by the Seller."  (Diebold Dep. Ex. 5 at

§ 7.1.)  Furthermore, the parties agreed that the Portfolio was

sold "as is" and that CCR did not "REPRESENT, WARRANT OR COVENANT

THE NATURE, ACCURACY, COMPLETENESS, ENFORCEABILITY OR VALIDITY OF

[the Portfolio]."  (Id. § 7.8 (emphasis in original).)

Accordingly, Summit cannot prove that CCR breached the contract,

and the court grants summary judgment on this claim.  See Bank

Midwest, Minn., Iowa, N.A. v. Lipetzky, 674 N.W.2d 176, 179 (Minn.

2004) (summary judgment warranted when contract terms are

unambiguous and plain).

**V.    Deceptive Trade Practices**

Summit next argues that CCR violated the MDTPA, and asserts that it is entitled to injunctive relief, damages and attorneys' fees under the MDTPA and Minnesota's private attorney general statute.  See Minn. Stat. §§ 325D.45, 8.31 subdiv. 3a.  The MDTPA prohibits a person from representing goods as having qualities that they do not have.  See id. § 325D.44 subdiv. 1(5), (7).  The MDTPA does not require proof of damages or intent to deceive, and allows injunctive relief to persons "likely to be damaged by a deceptive trade practice of another."  Id. § 325D.45.  Injunctive relief is the sole remedy for violation of the MDTPA.  Alsides v. Brown Inst., Ltd., 592 N.W.2d 468, 476 (Minn. Ct. App. 1999).

Summit has introduced facts from which a jury could conclude that CCR's advertising email violated the MDTPA.  Summit is not, however, entitled to injunctive relief because the MDTPA applies only to prospective damage.  See Minn. Stat. § 325D.45 subdiv. 1 (providing relief to "a person likely to be damaged").  Summit alleges a single deceptive trade practice by CCR in 2006.  Past injury does not give rise to equitable relief.  See Cherne Indus., Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 92 (Minn. 1979). Moreover, Summit has neither alleged an ongoing act by CCR that warrants injunctive relief nor provided evidence that it is likely to be damaged by a deceptive practice.

Summit's claim also fails under the private attorney general statute, which allows a person injured by an MDTPA violation to "bring a civil action and recover damages, together with costs and disbursements." Minn. Stat. § 8.31 subdivs. 1, 3a. Even assuming Summit could show that it was injured, Summit cannot demonstrate that its action benefits the public interest. See Ly v. Nystrom, 615 N.W.2d 302, 313–14 (Minn. 2000).

The court evaluates whether a claim benefits the public interest by considering the form of the deceptive practice and the type of relief sought. See Wehner v. Linvatech Corp., No. 06-cv-1709, 2008 WL 495525, at *3 (D. Minn. Feb. 20, 2008). Misleading advertising to the general public supports a finding that a claim benefits the public. Collins v. Minn. Sch. of Bus., Inc., 655 N.W.2d 320, 330 (Minn. 2003). In contrast, a one-on-one misrepresentation is purely private and is not a ground for relief. Ly, 615 N.W.2d at 314. The court analyzes whether the deceptive practice was directed at the public at large rather than the number of persons actually affected. See Collins, 655 N.W.2d at 330.

In this case, CCR sent an email to 2,000 buyers of small debts. CCR's email was neither an advertisement to the public at large nor a one-on-one transaction. An email, however, is not offered or available to the general public. Cf. id. Further, the subject of CCR's email, the sale of subperforming consumer debt, is not of general interest. Therefore, Summit's claim does not

13

benefit the public at large, and relief is not available under Minnesota's private attorney general statute.[6]  Accordingly, the court does not award damages or costs and grants summary judgment on this claim.

## VI.  Unlawful Trade Practices

The MUTPA provides, "[n]o person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise." Minn. Stat. § 325D.13.  Individuals may only enforce the MUTPA under § 8.31, and the court has already determined that relief is not available to Summit under the private attorney general statute.  Therefore, the court grants summary judgment on this claim.

### CONCLUSION

Based on the above, **IT IS HEREBY ORDERED** that CCR, Diebold and SCS' motions for summary judgment [Doc. Nos. 34 & 36] are granted. **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 9, 2010                    s/David S. Doty
                                         David S. Doty, Judge
                                         United States District Court

---

[6] As already noted, Summit is not entitled to injunctive relief.  Merely adding a claim for injunctive relief is not sufficient to turn a private action into an action for the public benefit.   See Ly, 615 N.W.2d at 313 (considering policies underlying § 8.31 to avoid bringing every "dog bite case ... under an attorney's fees statute").